IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ANDRE LOVELL DOTSON,                )
                                    )
          Plaintiff,                )
                                    )
VS.                                 )          No. 13-2766-JDT-tmp
                                    )
SHELBY COUNTY, ET AL.,              )
                                    )
          Defendants.               )

---

ORDER ON PENDING MOTIONS,
MODIFYING RESTRICTIONS IMPOSED IN
CASE NUMBERS 00-2229 AND 02-2086,
DISMISSING CERTAIN CLAIMS AND PARTIES, AND
DIRECTING REMAINING DEFENDANTS TO RESPOND
TO PLAINTIFF'S MOTION FOR TRO AND PRELIMINARY INJUNCTION

---

On May 17, 2013, Plaintiff Andre Lovell Dotson, booking number 12146457, a

pretrial detainee at the Shelby County Criminal Justice Complex ("Jail") in Memphis,

Tennessee, forwarded a *pro se* complaint, titled "Injunctive Relief," to the Circuit Court for

Shelby County, Tennessee. The case was filed on September 9, 2013, as case number CT-

003910-13, Division VII. (ECF No. 1-1.) The complaint seeks relief under the Religious

Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc *et*

*seq.*, the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq.*, and 42

U.S.C. § 1983. Two of the Defendants, Shelby County Sheriff William Oldham and Chief

Jailer Robert Moore, removed the case to this Court on October 2, 2013. (ECF No. 1.) The

Clerk shall record the Defendants as Shelby County, Oldham, Moore, and Aramark Correctional Services, LLC ("Aramark"), which was sued as "Aramark, Inc."[1] The individual Defendants are sued in their official capacities. (ECF No. 1-1 at 1.)

There is no mystery about why Plaintiff filed this case initially in state court. Dotson has filed more than three cases in this district that have been dismissed as frivolous or for failure to state a claim. *See Dotson v. Gilless*, No. 00-2229-BBD-ja (W.D. Tenn. Mar. 29, 2000) (ECF No. 3, order dismissing case and imposing sanctions). In addition to recognizing Dotson as a three-strike filer under 28 U.S.C. § 1915(g), the order in case number 00-2229 barred Plaintiff from filing any lawsuit in this district without leave of court (*id.* at 15-17) and advised him that "[a]ny complaint submitted by plaintiff without this motion [for leave to file] and [supporting] affidavit will not be filed but will be immediately returned to the plaintiff for failure to comply with this order" (*id.* at 16).

Dotson subsequently filed several suits in state court that were removed to this Court. On January 9, 2002, a suit filed by Dotson in the Shelby County Circuit Court was removed. In an order issued on January 17, 2002, then-United States District Judge Bernice B. Donald dismissed the complaint for want of subject-matter jurisdiction and as frivolous. *Dotson v. Gilless*, No. 02-2013-BBD-dkv (W.D. Tenn. Jan. 17, 2002) (ECF No. 2, order dismissing complaint). In that order, Judge Donald reaffirmed the sanctions that had previously been imposed and sanctioned Dotson $150 on the ground that he had "flagrantly avoided

---

[1] Although the case caption uses the designation "et al.", the Court will not speculate about the identity of any individual or entity that Plaintiff intends to sue.

2

complying with the Court's order in [case number 00-2229] despite the warning that failure to comply would result in the imposition of sanctions, including a monetary fine . . . ." *Id.* at 13 (internal quotation marks omitted).

A second case filed by Dotson was removed to this Court on February 12, 2002. In an order issued on April 23, 2002, then-United States District Judge Julia Smith Gibbons dismissed the case for failure to state a claim. *Dotson v. Gilless*, No. 02-2086-JSG-ja (W.D. Tenn. Apr. 23, 2002) (ECF No. 3, order dismissing case). That order also reaffirmed the sanctions imposed in case number 00-2229 and imposed the following, additional restriction:

> Plaintiff shall abide by those orders [in case number 00-2229] in connection with any case filed in, or removed to, this court. The court reiterates the above prohibition on the clerk's filing of any new case from this prisoner without leave of court. Moreover, any case submitted by this plaintiff to another court that is thereafter transferred to this district, or removed from state court, will result in the same sanctions.

(*Id.* at 14.) Dotson was also fined $150. (*Id.*)

A third case filed in state court by Dotson was removed to this Court on August 1, 2003. In an order issued on January 29, 2004, United States District Judge Samuel H. Mays, Jr. dismissed the case for failure to state a claim. *Dotson v. Shelby Cnty.*, No. 03-2566-SHM-tmp (W.D. Tenn.) (ECF No. 4). Judge Mays declined to sanction Dotson because the complaint arguably alleged that he was in imminent danger of serious physical injury. (*Id.* at 12-13 n.5.)

Since the commencement of this action, the parties have filed many documents and motions. On October 10, 2013, Plaintiff filed a "Notice of Motion to Objection to the

Defendants [sic] Notice of Removal," which appears to argue that the Notice of Removal violates the Anti-Injunction Act, 28 U.S.C. § 2283. (ECF No. 3.) Defendants Oldham and Moore filed a response to Plaintiff's filing on October 30, 2013 (ECF No. 10), and Aramark filed its response on November 4, 2013 (ECF No. 11).

On November 7, 2013, the Clerk docketed Plaintiff's Motion to Remand the Case to State Court. (ECF No. 13.) On November 18, 2013, responses to the Motion to Remand were received from Aramark and from Defendants Oldham and Moore, respectively. (ECF Nos. 16 & 17.)

On November 13, 2013, Plaintiff filed a motion, titled "Motion for Leave to File an Amended Remand the Case to State Court" (ECF No. 14), which appears to be a motion to amend the Motion to Remand. On November 25, 2013, Aramark filed a response to the motion to amend. (ECF No. 21.) The "Motion for Leave to File an Amended Remand the Case to State Court" is GRANTED. The Court will consider the argument presented in that filing in evaluating Plaintiff's Motion to Remand.

The removal statute, 28 U.S.C. § 1441(a), provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiff's complaint asserts claims under three federal statutes and the First Amendment to the United

4

States Constitution and, therefore, this Court has original jurisdiction. Oldham and Moore were, therefore, entitled to remove the case to federal court.

The Court has considered whether Plaintiff's status as a three-strike filer precludes him from litigating the claims in this removed action in federal court. Because 28 U.S.C. § 1915(g) does not alter the Court's subject-matter jurisdiction, a district court cannot remand a properly removed action to state court on the ground that the prisoner is a three-strike filer. *See Lloyd v. Benton*, 686 F.3d 1225, 1227-28 (11th Cir. 2012); *Lisenby v. Lear*, 674 F.3d 259, 262-63 (4th Cir. 2012); *Hartley v. Comerford*, No. 3:13cv488/MCR/EMT, 2014 WL 241759, at *5-6 (N.D. Fla. Jan. 22, 2014) (denying prisoner's motion to remand case on ground that he is a three-strike filer); *Lanier v. Holiday*, No. 05-2203-Ml/P, 2005 WL 1513106, at *2 (W.D. Tenn. June 16, 2005) ("Because the complaint asserts claims pursuant to 42 U.S.C. § 1983, over which the federal courts have original jurisdiction, the defendants have an absolute right to remove it from state court.").[2] The action was properly removed under 28 U.S.C. § 1441(a) and, therefore, Plaintiff's Motion to Remand, as amended, is DENIED.[3]

---

[2] *But see Bartelli v. Beard*, No. 3:CV-08-1143, 2008 WL 4363645, at *2 (M.D. Pa. Sept. 24, 2008) (remanding removed case to state court to state court to allow prisoner to litigate potentially meritorious claims).

[3] The Anti-Injunctive Act, on which Dotson relies (ECF No. 3 at 2-3), is inapplicable here. The Act, 28 U.S.C. § 2283, states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect and effectuate its judgments." The Court has not issued an injunction staying proceedings in the state court. Instead, federal law precludes the state court from proceeding in a removed case. 28 U.S.C.

(continued...)

On November 13, 2013, Defendants Oldham and Moore filed a Motion to Refer Pro-Se Prisoner's Complaint for Review Pursuant to 28 U.S.C. § 1915A and Stay Response Dates or in the Alternative for an Extension of Time to Respond. (ECF No. 15.) On November 22, 2013, Aramark joined in this motion. (ECF No. 20.) On December 4, 2013, Aramark filed a Motion to Stay Discovery Pending the Court's Ruling on Aramark's Motion to Dismiss. (ECF No. 23.)[4] In an order issued on December 5, 2013, the Court granted the motions for screening and to stay discovery pending screening and the disposition of Aramark's motion to dismiss. (ECF No. 24.)[5]

On November 20, 2013, Plaintiff filed a Motion for Appointment of Counsel. (ECF No. 18.) On December 4, 2013, Defendants Oldham and Moore filed a response in opposition to the Motion that also objected to certain exhibits to Plaintiff's Motion. (ECF

_____

[3](...continued)
§ 1446(d).

    In his amendment to the Motion to Remand, Plaintiff cites Tennessee Code Annotated § 41-21-812(b), which states that "[a] court may allow an inmate who has not paid any costs or expenses assessed against the inmate to file a claim for injunctive relief seeking to enjoin an act or failure to act that creates a substantial threat of irreparable injury or serious physical harm to the inmate." (ECF No. 14-1 at 1.) Plaintiff argues that he may be unable to litigate this case in federal court because he is a three-strike filer and that he is entitled to pursue his claim for injunctive relief in state court. (*Id.* at 1, 3.) Because the complaint asserts claims under the United States Constitution and federal law, Defendants are entitled to remove the suit. The statute cited by Plaintiff does not provide a substantive cause of action but, rather, is contained in a title of the Tennessee Statutes Annotated governing lawsuits by inmates. That statute cannot alter the right of Defendants Oldham and Moore to remove a suit over which there is federal jurisdiction.

[4] The Motion referred to the Motion to Dismiss filed by Aramark on November 22, 2013. (ECF No. 19.)

[5] The result of the Court's screening under 28 U.S.C. § 1915A(b) is addressed *infra.*

6

No. 22.)  On December 5, 2013, Aramark joined the response filed by Oldham and Moore. (ECF No. 25.)  The Court declines to strike the exhibits to Plaintiff's Motion and has considered them to the extent they are relevant to the request for the appointment of counsel.

Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel."  However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right."  *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (no constitutional right to counsel in a civil case); *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993) ("There is no constitutional or . . . statutory right to counsel in federal civil cases . . . .").  Appointment of counsel is "a privilege that is justified only by exceptional circumstances."  *Lavado*, 992 F.2d at 606 (internal quotation marks and citation omitted).  "In determining whether 'exceptional circumstances' exist, courts have examined the type of case and the abilities of the plaintiff to represent himself.  This generally involves a determination of the complexity of the factual and legal issues involved."  *Id.* at 606 (internal quotation marks and citations omitted).  Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when his chances of success are extremely slim. *Id.* (citing *Mars v. Hanberry*, 752 F.2d 254,

256 (6th Cir. 1985)); *see also Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (same).[6]

Plaintiff has not satisfied his burden of demonstrating that the Court should exercise its discretion to appoint counsel in this case. The case is not complex, and nothing in Plaintiff's submission distinguishes this case from numerous other cases that are litigated by *pro se* prisoners without the assistance of counsel. Finally, there is a severe shortage of attorneys willing to accept appointment to prisoner civil rights cases on a *pro bono* basis. Under these circumstances, and entirely apart from the merits of the instant case, Plaintiff's history of filing meritless litigation does not make him a viable candidate for appointment of counsel. The motion for appointment of counsel is DENIED.[7]

On January 2, 2014, Plaintiff filed a Motion for Leave to File an Amended Complaint, accompanied by his proposed amended complaint, which was intended to supersede, rather than to supplement, his original complaint. (ECF No. 33.) Aramark filed its response in

---

[6] These factors are important, because § 1915(e)(1) "does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants. *Mallard v. United States Dist. Ct.*, 490 U.S. 296, 310 (1989).

[7] On November 22, 2013, Aramark filed a Motion to Dismiss. (ECF No. 19.) Plaintiff filed a response in opposition to the motion, which was titled "Motion In Opposition of Defendant's Motion For Screening, Motion For Dismissal For Failure To State a Claim, and Motion To Stay Discovery," on December 18, 2013. (ECF No. 29.) Aramark filed a reply on January 15, 2014. (ECF No. 34.) Because the Court has granted the motion to refer the case for screening pursuant to 28 U.S.C. § 1915A(b), the Court will address Aramark's Motion, to the extent necessary, after the case has been screened.

opposition on January 16, 2014. (ECF No. 35.)[8] For good cause shown, leave to amend is GRANTED. The Court will consider the allegations of the amended complaint, which is now the operative pleading in this matter.[9]

On February 10, 2014, Plaintiff filed a motion, titled "Petition for a Writ of Habeas Corpus Ad Testificandum," that seeks a hearing in this matter commencing August 8, 2014. (ECF No. 41.) That motion is not well taken and is DENIED.

On March 17, 2014, Plaintiff filed a Motion to Lift Stay of Discoveries. (ECF No. 45.)[10] Defendants Oldham and Moore filed a response in opposition to the Motion on March 26, 2014 (ECF No. 46), and Aramark filed its response on March 27, 2014 (ECF No. 47).

---

[8] On February 7, 2014, Defendants Oldham and Moore filed an untimely response to the Motion, with no explanation for their late filing. (ECF No. 39.) The Court declines to consider that filing.

[9] As discussed *infra,* the Court will consider the allegations of the original complaint to assess whether Dotson adequately alleged that he was in imminent danger of serious physical injury when he commenced this action.

On January 17, 2014, Plaintiff filed a motion seeking a temporary restraining order and a preliminary injunction, titled "Memorandum of Law In Support Of Plaintiff's Motion For A Temporary Restraining Order And Preliminary Injunction." (ECF No. 36.) That Motion will be addressed *infra,* after the case has been screened.

[10] On February 14, 2014, the Clerk docketed Plaintiff's First Request for Production of Documents. (ECF No. 42.) That document should not have been accepted for filing because discovery requests and responses are only filed when the Court so requests or when the Local Rules or the Federal Rules of Civil Procedure otherwise permit. *See* Local Rule 26.1(a)(2). Plaintiff also was not entitled to serve discovery requests until the stay of discovery had been lifted.

Also on February 14, 2014, Plaintiff filed a Proposed Early Settlement Agreement. (ECF No. 43.) Settlement proposals are not properly docketed. That filing is STRICKEN from the docket.

Because the screening had not been completed when the Motion was filed, the Motion is DENIED.

On June 2, 2014, Plaintiff filed a Motion to Compel Discovery. (ECF No. 49.) Aramark responded to the Motion on June 10, 2014 (ECF No. 51), and Oldham and Moore filed their response on June 12, 2014 (ECF No. 52). Because discovery in the matter has been stayed, the motion to compel is DENIED.

On January 23, 2014, the Clerk issued a letter setting a trial date of August 18, 2014, in this matter. (ECF No. 37.) On June 18, 2014, Defendants filed a Joint Motion and Supporting Memorandum to Continue both the trial date and the pre-trial order deadline until screening is completed. (ECF No. 54.) Plaintiff responded to the Motion on July 7, 2014. (ECF No. 55.) The setting letter was erroneously issued while the case was stayed; therefore, the Motion to Continue is GRANTED.

Before addressing the remaining motions, the Court has considered, as a preliminary matter, whether Dotson is eligible to litigate this claim in federal court despite his designation as a three-strike filer and the sanctions that were imposed on him in case numbers 00-2229 and 02-2086. Twenty-eight U.S.C. § 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

As previously noted, the Court cannot remand the case on the ground that Plaintiff is a three-strike filer. Section 1915(g) also is inapplicable in this case because the filing fee was paid by Defendants Oldham and Moore.

The Sixth Circuit has not addressed whether a district court can dismiss removed claims because the prisoner-plaintiff is a three-strike filer. Several courts in other jurisdictions that have considered the issue have permitted removed cases by three-strike filers to proceed. *See Gay v. Chandra*, 682 F.3d 590, 596 (7th Cir. 2012) ("The PLRA's three-strikes obstacle does not apply in state courts, where Gay filed this suit."); *Howard v. Braddy*, No. 5:12-CV-404 (MTT), 2013 WL 5461680, at *4 (M.D. Ga. Sept. 30, 2013) (denying motion to dismiss under § 1915(g) because "[t]he clear language of the statute applies only to actions *in forma pauperis*. . . . The Court will not construe 28 U.S.C. § 1915(g) to apply to non-*in forma pauperis* cases . . . .") (report and recommendation adopted by district court); *Gray v. Cardoza*, No. CIV S-05-2611 DFL DAD P, 2006 U.S. Dist. LEXIS 43710, at *5 (E.D. Cal. June 27, 2006) ("Since the filing fee has been paid by counsel for defendant Woodford, plaintiff is not barred by 28 U.S.C. § 1915(g) from proceeding in this court with the instant action.") (report and recommendation), *adopted,* 2006 U.S. Dist. LEXIS 71167 (E.D. Cal. Sept. 29, 2006); *see also Jae v. Stickman*, No. 12-1332, 2012 WL 5830633 (W.D. Pa. Nov. 16, 2012) (declining to dismiss removed case filed by three-strike filer *sua sponte* without addressing whether § 1915(g) provides a basis for dismissal); *Lanier*, 2005 WL 1513106, at *2 (screening removed case under 28 U.S.C. § 1915A). However, other courts have dismissed removed cases *sua sponte* under § 1915(g).

*See Farnsworth v. Wash. State Dep't of Corr.*, No. C07-0206-RSM, 2007 WL 1101497 (W.D. Wash. Apr. 9, 2007).

It is unnecessary for the Court to resolve whether a removed case can be dismissed *sua sponte* under 28 U.S.C. § 1915(g) because, even if § 1915(g) applied to removed actions, the complaint arguably comes with the "imminent danger" exception to that provision.[11] The assessment whether a prisoner is in imminent danger is made at the time of the filing of the complaint. *See, e.g.*, *Vandiver v. Vasbinder*, 416 F. App'x 560, 561-62 (6th Cir. 2011); *Rittner v. Kinder*, 290 F. App'x 796, 797-98 (6th Cir. 2008); *Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312-16 (3d Cir. 2001) (en banc).

In his original complaint, Plaintiff alleges that he was booked into the Jail on November 28, 2012. During intake, Plaintiff stated that he is a "striving Muslim who practice Islam as his religiously way of life." (ECF No. 1-1 at 2.)[12] Plaintiff was placed on a 2800 calorie low-fat diet. He was informed that, according to the Jail's *Inmate Handbook*,

---

[11] The Court also declines to dismiss the case *sua sponte* because Plaintiff failed to pay the sanctions imposed in previous cases. The sanctions orders contained no provision barring Plaintiff from filing future cases until the sanction had been paid. *See Gay*, 682 F.3d at 596 ("As a last resort, when the litigant refuses to pay outstanding fees imposed for abusing the judicial process, either we or a district court can institute a filing bar to prevent a plaintiff from bringing *future* suits until he pays the outstanding fines.").

[12] Although the original complaint is no longer the operative pleading in this matter, it is relevant to whether Plaintiff alleged that he was in imminent danger of serious physical injury when he commenced his state-court action.

"religious diets may be subject to verification by the Chaplain and must be approved by the Assistant Chief of Programs or designee." (*Id.*)

After Plaintiff was assigned to a housing pod and received a PIN number, he submitted a request to see Chaplain Muhammad, the Islamic volunteer chaplain, to obtain approval for a halal diet. Plaintiff also notified medical staff that, because of his religious beliefs, he was not consuming any meat, was losing weight rapidly, and was "always feeling physically down." (*Id.*) Medical staff ordered that Plaintiff receive a sack lunch every night, consisting of a sandwich and an orange. Plaintiff was unable to eat the sandwich because it contained meat. (*Id.*)

Chaplain Muhammad initially responded to Plaintiff that Defendant Moore was working on his request for a religious diet. Subsequently, on or about January 5, 2013, Muhammad told Plaintiff that Defendant Moore had said that, because only non-pork meats are served at the Jail, Plaintiff will have to eat the same meals that are served to other inmates. (*Id.*) Plaintiff has exhausted his administrative remedies. (*Id.* at 3-4.)

Under some circumstances, a refusal to provide a religiously sanctioned diet might satisfy the "imminent danger" requirement of § 1915(g). "The cases bear out that prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions. For the inmate, this is essentially a constitutional right not to eat the offending food item. If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002) (collecting cases); *see also Colvin v. Caruso,* 605 F.3d 282, 290 (6th Cir.

2010) (same). Because the original complaint alleges that Plaintiff has refused to eat certain items and is rapidly losing weight, it adequately alleges that Plaintiff was in imminent danger of serious physical injury when he commenced this action. Therefore, Plaintiff is entitled to litigate this case in federal court despite his status as a "three-strike" filer.[13]

The Court will now proceed to screen Plaintiff's amended complaint under 28 U.S.C. § 1915A(b). The amended complaint purports to assert claims under RLUIPA, RFRA, the Tennessee Constitution, and the First Amendment to the United States Constitution. (ECF No. 33-1 at 6-7, ¶¶ 26-29; *see also id.* at 1.) The claims against Defendants Oldham and Moore are now asserted against them in their individual capacities. (*Id.* at 2, ¶¶ 5-6.) The claim about the failure to serve halal meals is essentially identical to the claim in the original complaint. (*Id.* at 3-5, ¶¶ 10-22; *see also* ECF No. 1-1 at 2-4.)

The amended complaint also asserts a new claim arising from the failure to provide disposable razors. According to Plaintiff, disposable razors have been "taken . . . out of the system and replaced . . . with electric clippers . . . ." (ECF No. 33-1 at 5-6, ¶ 23.) This change allegedly violates the religious rights of Muslim prisoners, who are required, *inter*

---

[13] The Clerk filed this case despite the restrictions imposed in case number 00-2229, which require Plaintiff to obtain leave of court before filing any civil action. In case number 02-2086, those restrictions were made applicable to removed actions. On further reflection, imposition of the filing restrictions on removed actions is inappropriate because it was not Plaintiff who has removed the case to federal court. The Court also no longer requires three-strike filers to seek leave to file new lawsuits. Therefore, the Court MODIFIES the restrictions imposed in case numbers 00-2229 and 02-2086 to eliminate the requirement that Plaintiff seek leave to file future cases and that direct the Clerk not to file any complaint submitted by Plaintiff without leave of Court. All future cases submitted by Plaintiff, if any, will be assigned civil docket numbers for statistical purposes. All other restrictions imposed in case numbers 00-2229 and 02-2086 remain in force.

*alia,* to shave the hair from below their navels" and "depilate the [] hair from the arm pits." (*Id.*) The preamble to the amended complaint explains that the electric clippers "makes it impossible for the plaintiff to privately remove those hairs." (*Id.* at 1.) The prayer for relief seeks injunctive relief and compensatory and punitive damages. (*Id.* at 7-9.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

In assessing whether the complaint in this case states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,'

rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. As the Sixth Circuit has explained:

> Before the recent onslaught of *pro se* prisoner suits, the Supreme Court suggested that *pro se* complaints are to be held to a less stringent standard than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam). Neither that Court nor other

> courts, however, have been willing to abrogate basic pleading essentials in *pro se* suits. *See, e.g., id.* at 521, 92 S. Ct. at 596 (holding petitioner to standards of *Conley v. Gibson*); *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir.) (duty to be less stringent with *pro se* complaint does not require court to conjure up unplead allegations), *cert. denied*, 464 U.S. 986, 104 S. Ct. 434, 78 L. Ed. 2d 3366 (1983); *McDonald v. Hall*, 610 F.2d 16 (1st Cir.1979) (same); *Jarrell v. Tisch*, 656 F. Supp. 237 (D.D.C. 1987) (*pro se* plaintiffs should plead with requisite specificity so as to give defendants notice); *Holsey v. Collins*, 90 F.R.D. 122 (D. Md. 1981) (even *pro se* litigants must meet some minimum standards).

*Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Secretary of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

The Tennessee Court of Appeals has held that there is no private right of action for damages under the Tennessee Constitution. *See Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n*, 15 S.W.3d 434, 444-45 (Tenn. Ct. App. 1999), *perm. app. denied* (Tenn. Feb. 14, 2000); *Lee v. Ladd*, 834 S.W.2d 323, 324-25 (Tenn. Ct. App. Mar. 4, 1992). The Sixth Circuit has held the same. *See Cline v. Rogers*, 87 F.3d 176, 179-80 (6th Cir. 1996); *see also Peterson v. Dean*, No. 3:09-cv-628, 2009 WL 3517542, at *1 (M.D. Tenn. Oct. 23, 2009) ("Tennessee does not allow for a private right of action for damages based on violations of the Tennessee Constitution" (emphasis omitted)); *Alexander v. Beale Street Blues Co.*, 108 F. Supp. 2d 934, 945 (W.D. Tenn. 1999).

Plaintiff cannot sue Defendants under the RFRA. The Supreme Court has held that Congress exceeded its power under § 5 of the Fourteenth Amendment in enacting the RFRA. *City of Boerne v. Flores*, 521 U.S. 507 (1997). Since the decision in *Flores*, the RFRA applies only to the federal government. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vetetal*, 546 U.S. 418, 425 n.1 (2006); *Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010). Therefore, Plaintiff cannot challenge the conditions of his confinement at a county jail under the RFRA.

Plaintiff's claim under the Free Exercise Clause of the First Amendment is properly brought under 42 U.S.C. § 1983, which provides a right of action against state officials who violate a plaintiff's rights under the United States Constitution or federal law.[14] The Sixth

---

[14] Section 1983 provides: "Every person who, under color of any statute, ordinance,

(continued...)

Circuit has held that § 1983 is the exclusive means by which litigants may sue state officials for violations of their constitutional rights. *Thomas v. Shipka*, 818 F.2d 496, 500 (6th Cir. 1987) ("[W]e conclude that it is unnecessary and needlessly redundant to imply a cause of action arising directly under the Constitution where Congress has already provided a statutory remedy of equal effectiveness through which the plaintiff could have vindicated her constitutional rights."), *vacated on other grounds*, 488 U.S. 1036 (1989). The Court therefore CONSTRUES Plaintiff's constitutional claims as arising under 42 U.S.C. § 1983.[15]

"Inmates clearly retain protections afforded by the First Amendment . . . , including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. . . . The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid

---

[14](...continued)
regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[15] The Sixth Circuit has cautioned district courts to avoid construing complaints that assert claims directly under the Constitution as arising under 42 U.S.C. § 1983 in cases involving "a carefully drafted complaint filed by a plaintiff represented by counsel." *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1064 (6th Cir. 2008). Those concerns are absent in this case.

penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* (internal quotation marks, alteration and citation omitted); *see also Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration."). Thus, "when a prison regulation imposes on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89 (1987), and is not an "exaggerated response to such objectives,'" *id.* (internal quotation marks omitted); *see also Overton*, 539 U.S. at 132.

In this case, Plaintiff complains that the Jail has refused to serve him halal meats. Instead, Jail policy attempts to accommodate the religious beliefs of Muslim prisoner by serving only non-pork meats. Muslim prisoners do not have a constitutional right to require Jail officials to provide a diet containing halal meat. "Prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions. For the inmate, this is essentially a constitutional right not to eat the offending food item. If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Alexander*, 31 F. App'x at 179 (collecting cases). The Sixth Circuit has held in an unpublished opinion that provision of a vegetarian diet adequately protects Muslim inmates. *Abdullah v. Fard*, No. 97-3935, 1999 WL 98529, at *1 (6th Cir. Jan. 28, 1999) ("Abdullah averred that a prohibition against non-Halal meat was fundamental to his religion. However, he can comply with this prohibition by eating vegetarian meals. Thus, Abdullah's

First Amendment claim fails because the disputed policy does not force him to violate his religion."); *see also Abdul-Aziz v. Ricci,* ___ F. App'x ___, 2014 WL 2699758, at *3 (3d Cir. 2014) ("Abdul-Aziz has presented evidence establishing only that any meat eaten by Muslims must be Halal, not that Halal meats must be eaten on feast days.  Therefore his First Amendment rights were not violated, nor were his Fourteenth Amendment rights.");[16] *Williams v. Morton*, 343 F.3d 212, 220 (3d Cir. 2003) (rejecting claim that failure to provide halal meals in place of non-pork, vegetarian diet violated Free Exercise clause); *Spight v. Davidson,* No. 3:14-mc-0793, 2014 WL 2811829, at *2 (M.D. Tenn. June 23, 2014) ("In short, the plaintiff has no constitutional right to meat.  In similar cases where Muslim prisoners following a halal diet have alleged a violation of their rights as a result of being provided a vegetarian diet instead of a diet that included meat slaughtered in accordance with Islamic tenets, federal courts have uniformly held that a prisoner does not have a constitutional right to eat meat.") (collecting cases); *Cloyd v. Dulin*, No. 3:12-cv-1088, 2012 WL 5995234, at *4 (M.D. Tenn. Nov. 30, 2012) ("Muslim prisoners do not have a right under the First Amendment or the RLUIPA to be provided halal meat entrees; rather, a correctional facility need only provide Muslim prisoners with food that is not 'haram' (impermissible).") (collecting cases).

---

[16] The Third Circuit in *Abdul-Aziz* also rejected the claim, advanced by Plaintiff in this case (ECF No. 33-1 at 4, ¶ 15), that his rights under the Equal Protection Clause were violated because Jewish inmates are served kosher meals.  2014 WL 2699758, at *3 ("Jewish inmates received Kosher meals at Passover because they were determined to be necessary for religious observance.  Because the vegetarian meals did not violate Islam's proscription on non-Halal meat, while non-Kosher meals would not have met the religious requirements of Passover, reasonable penological interests were served by the differential treatment." (citation omitted)).

The Court declines to dismiss Plaintiff's First Amendment claim arising from the failure to provide a halal diet under 28 U.S.C. § 1915A(b)(1). Although Plaintiff does not have a First Amendment right to be served halal meats, he does have a right to a nutritionally adequate diet that does not require him to consume non-halal meats. The amended complaint alleges that the Jail provides all inmates with a non-pork diet, that Plaintiff is unable to eat the meat that is offered because it is not halal, and that he is losing weight. Therefore, the amended complaint sufficiently alleges that the diet provided by the Jail is not nutritionally adequate unless Plaintiff consumes the non-halal meats.

The RLUIPA provides, in pertinent part, that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1)    is in furtherance of a compelling governmental interest; and
>
> (2)    is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The Court of Appeals has set forth the standard for evaluating an inmate's claim under the RLUIPA:

> An inmate asserting a claim under the RLUIPA must first produce prima facie evidence demonstrating that his religious exercise was substantially burdened. *See* § 2000cc-2(b). An action of a prison official will be classified as a substantial burden when that action forced an individual to choose between following the precepts of his religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs.

The government then bears the burden of persuasion to prove that any substantial burden on the inmate's exercise of his religious beliefs was "in furtherance of a compelling governmental interest" and imposition of the substantial burden on the inmate is "the least restrictive means of furthering that compelling governmental interest." §§ 2000cc–2(b), 2000cc–1(a)(1)–(2). If a substantial burden on religion is found, the RLUIPA employs a less deferential standard—the least restrictive means of furthering a compelling governmental interest—than the standard applied to religious exercise First Amendment claims, a uniform rule having a reasonable relation to legitimate penological interests.

*Hayes v. Tennessee,* 424 F. App'x 546, 554-55 (6th Cir. 2011) (internal quotation marks, alteration and additional citations omitted).

The Court will assume that a halal diet is a "religious exercise" within the meaning of the RLUIPA. The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Thus, the "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion," but it "does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). The Court will also assume that Plaintiff's desire for a halal diet is sincere.

The Sixth Circuit has addressed the standard for determining whether a governmental policy or practice substantially burdens the exercise of religion only in the zoning context,[17] where it stated as follows:

---

[17] The statutory provision concerning land use regulations, found at 42 U.S.C. § 2000cc(a)(1), is, on its face, similar to the provision concerning prisoners, found at 42 U.S.C. § 2000cc-1(a)(1).

23

The U.S. Supreme Court has not yet defined "substantial burden" as it applies to RLUIPA. Neither does the statute itself contain any definition of the term. The statute's legislative history, however, indicates that the "term 'substantial burden' as used in this Act is not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden or [sic] religious exercise." 146 Cong. Rec. S7774-01, 7776 (daily ed. July 27, 2000) (joint statement of Sens. Hatch and Kennedy).

. . . .

In short, while the Supreme Court generally has found that a government's action constituted a substantial burden on an individual's free exercise of religion when that action forced an individual to choose between "following the precepts of her religion and forfeiting benefits" or when the action in question placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Sherbert[ v. Verner*, 374 U.S. 398, 404 (1963)]; *Thomas[ v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981)], it has found no substantial burden when, although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs. *See Lyng[ v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988)]; *Braunfeld[ v. Brown*, 366 U.S. 599, 605-06 (1961); *see also Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 702 (E.D. Mich. 2004) ("[C]ourts have been far more reluctant to find a violation where compliance with the challenged regulation makes the practice of one's religion more difficult or expensive, but the regulation is not inherently inconsistent with the litigant's beliefs.").

*Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-35 (6th Cir. 2007); *see also Barhite v. Caruso,* 377 F. App'x 508, 511 (6th Cir. 2010) (applying *Living Water* standard to prisoner's RLUIPA claim).[18]

[18] *See also Living Water*, 258 F. App'x at 737 ("We decline to set a bright line test by which to 'measure' a substantial burden and, instead, look for a framework to apply to the facts before us. To that end, we find the following consideration helpful: though the government action may make religious exercise more expensive or difficult, does the government action place substantial pressure on a religious institution to violate its religious beliefs or effectively bar a religious institution from using its property in the exercise of its religion?").

A prison does not impose a substantial burden on a Muslim inmate's exercise of his religion where he has an alternative to eating non-halal meat. *See, e.g., Cloyd,*, 2012 WL 5995234, at *4 ("[A]s long as a plaintiff is given an alternative to eating non-halal meat, he does not suffer a 'substantial burden' to his religious beliefs under the RLUIPA."); *Hudson v. Caruso,* 748 F. Supp. 2d 721, 730 (W.D. Mich. 2010) ("Furthermore, there is no 'substantial burden' to plaintiff's religious beliefs under RLUIPA, because they are given alternatives to eating non-halal meat. While plaintiffs may want to have halal meat entrees rather than vegetarian entrees and non-meat substitutes, their food preferences, as prisoners, are limited." (citations omitted)); *cf. Heard v. Caruso*, 351 F. App'x 1, 10 (6th Cir. 2009) ("If Heard's religion requires adherence to a Nation-of-Islam diet, prison officials' refusal to accommodate this diet would impose a substantial burden.").

The Court declines to dismiss Plaintiff's RLUIPA claim arising from the failure to provide him with halal meat for the reasons previously stated in connection with the Free Exercise claim. Although the Jail provides non-pork meals, the amended complaint alleges that Plaintiff's religion requires him to avoid the consumption of all meat that is not halal. The complaint also alleges that Plaintiff has lost weight due to his refusal to eat non-halal meat.

The complaint also asserts claims under the Free Exercise Clause and the RLUIPA arising from the requirement that Muslim inmates remove the hair from their armpits and below their navels. (ECF No. 33-1 at 5-6, ¶ 23.) According to Dotson, the Jail has replaced disposable razors with electric clippers. (*Id.*) Because the complaint does not allege that

Dotson's religion forbids the use of electric clippers to remove body hair, there is no allegation that his rights under the Free Exercise Clause or the RLUIPA have been violated. That the use of electric clippers might somehow reduce an inmate's privacy is not akin to requiring him to violate his religious beliefs.

Therefore, the Court DISMISSES Plaintiff's claims under the Tennessee Constitution and RFRA for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1). The Court also DISMISSES Plaintiff's § 1983 and RLUIPA claims arising from the failure to provide disposable razors, pursuant to 28 U.S.C. § 1915A(b)(1). The only remaining claims are the § 1983 Free Exercise Claim and the RLUIPA claim arising from the failure to provide a halal diet.

It is now appropriate to address Aramark's Motion to Dismiss, which was filed on November 22, 2013. (ECF No. 19.) Plaintiff responded to the motion on December 18, 2013. (ECF No. 29.) Aramark filed its reply on January 15, 2014. (ECF No. 34.)[19] The legal standard for evaluating a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure has been previously addressed, *supra*.

In its Motion to Dismiss, Aramark first argues that the RFRA is inapplicable to it. (ECF No. 19-1 at 7-8.) The Court has already dismissed the RFRA claim against all parties; therefore, it is unnecessary to address this argument. Next, Aramark argues that Plaintiff's Free Exercise claim should be dismissed because he does not have a direct cause of action

---

[19] On December 23, 2013, the Court extended Aramark's time to file its reply until January 15, 2014. (ECF No. 31.)

arising under the First Amendment. (ECF No. 19-1 at 8-9.) The Court has already held that Plaintiff's Free Exercise claim is properly construed as arising under 42 U.S.C. § 1983. This aspect of Aramark's motion is DENIED.

Aramark also asserts that Plaintiff's RLUIPA and Free Exercise claims must be dismissed because Plaintiff has not alleged that Aramark acts under color of state law. (ECF No. 19-1 at 9-13.) "A § 1983 plaintiff may not sue purely private parties." *Brotherton v. Cleveland*, 173 F.3d 552, 567 (6th Cir. 1999). Thus, "[i]n order to be subject to suit under § 1983, [a] defendant's actions must be fairly attributable to the state." *Collyer v. Darling*, 98 F.3d 211, 231-32 (6th Cir. 1997). "In the Sixth Circuit, 'it is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting under color of state law.'" *Johnson v. Aramark,* No. 3:11CV-P517-M, 2012 WL 219503, at *2 n.3 (W.D. Ky. Jan. 25, 2012) (quoting *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993)), *aff'd,* 482 F. App'x 992 (6th Cir. 2012). Construed liberally, the amended complaint alleges that Aramark operates inside the Jail to provide food services to inmates. (ECF No. 33-1 at 2, ¶¶ 7-8; *id.* at 4-5, ¶¶ 19-20.)

Aramark has cited decisions from other jurisdictions that dismissed claims against it for failure sufficiently to allege state action. (ECF No. 19-1 at 12-13). However, Aramark has failed to cite the decisions from other jurisdictions holding that it *is* a state actor under § 1983. *See, e.g., Wilmoth v. Aramark Corr. Servs., LLC,* No. 10-5048, 2012 WL 4472147, at *5 (W.D. Ark. Aug. 16, 2012) (denying summary judgment, explaining that "Benton

27

County has a constitutional obligation to provide nutritionally adequate meals to the inmates of the BCDC. Benton County has delegated this obligation to Aramark and Aramark contractually assumed this obligation") (report and recommendation), *adopted,* 2012 WL 4472145 W.D. Ark. Sept. 27, 2012); *Frazier v. Aramark,* No. CIV S-10-0610 EFB P, 2011 WL 3847188, at \*2 (E.D. Cal. Aug. 30, 2011) ("Jails have a responsibility to provide adequate food to their inmates. Thus, if a jail completely delegates this duty to a private company, the private company is functioning as a state actor for the purpose of section 1983, because its conduct is fairly attributable to the state." (citation omitted)); *McCullum v. City of Philadelphia*, No. 98-5858, 1999 WL 463696, at \*3 (E.D. Pa. July 3, 1999) ("the court finds that Plaintiff has sufficiently alleged facts which show Aramark was acting under color of state law for purposes of § 1983"); *see also Mozden v. Heller,* No. 5:13-CV-05160, 2014 WL 2986711, at \*2 (W.D. Ark. July 2, 2014) (denying motion to dismiss claim against Aramark because "this Court and other courts have held that a contracted food service provider, such as Aramark, can be held liable under § 1983 as a state actor because, in that situation, the food service provider has assumed the state's constitutional obligation to provide a nutritionally adequate diet to inmates"); *Pagan v. Westchester Cnty.,* No. 12 Civ. 7699(PAE)(JCF), 2014 WL 982876, at \*24 (S.D.N.Y. Mar. 12, 2014) ("Here, Westchester County has a duty to provide nutritionally adequate food to those incarcerated within its facility. The County has contracted with Aramark to perform this governmental function. Thus, Aramark is serving a public function in providing daily meals to inmates."); *DeJesus v. Aramark Food Serv., Inc.,* No. 13-5734, 2014 WL 144732, at \*3 n.2 (E.D. Pa. Jan. 14,

2014) ("In cases similar to the one at issue here, several courts in this district have considered Aramark to have acted under color of state law for purposes of § 1983 by performing the traditional government function of providing food service at a prison.").[20]

---

[20] It is not proper for an attorney to cherry-pick only the decisions that are favorable to his position. *See, e.g.,* W.D. Tenn. Guidelines for Professional Courtesy and Conduct, § I.4(a) (a lawyer should "[n]ever knowingly misstate fact or law, regardless of any pressure to do so"). In denying a Rule 12(b)(6) motion filed by Aramark in a prisoner case that raised a similar issue, one judge has stated that

> in general, Aramark has picked out and relied on favorable cases without at the same time acknowledging that other courts have disagreed and reached the opposite conclusion. . . . In its opening brief, Aramark cited to various cases that come from all over the country. . . . The citation to unreported decisions from fairly remote jurisdictions (relative to our court in Illinois) shows that Aramark's outside counsel in this case or perhaps Aramark's general counsel has access to a large number of cases that Aramark is no doubt involved in across the country. It is one thing to cite to these cases, copies of which were at least attached to the brief, but it is another to do so in a way that gives the impression that they represent a uniform conclusion across the country. This does not appear to be the case, at least based on this Court's own brief Westlaw research. Without much difficulty, we found the following cases, none of which were acknowledged in Aramark's opening brief: *Wilmoth v. ARAMARK Correctional Services, LLC*, 2012 WL 4472147, *5 (W.D.Ark. Aug.16, 2012) ("ARAMARK maintains it is simply a private food service contractor for a detention facility and has not been delegated penal responsibilities. It maintains it cannot be held liable under § 1983 because it is not a state actor. I reject this argument."); *Setzer v. ARAMARK Correctional Services*, 2011 WL 7071078, * 3 (W.D.Ark. Nov.22, 2011) (same); *Johnson v. ARAMARK*, 2012 WL 219503, * 2 n. 3 (W.D.Ky. Jan.25, 2012) (because Aramark contracted with the state of Kentucky to provide food services to the prisons, it is clear that Aramark can be considered a state actor for purposes of § 1983); *Frazier v. ARAMARK*, 2011 WL 3847188. * 2 (E.D.Cal. Aug. 30, 2011) (denying a motion to dismiss brought by Aramark and stating: "if a jail completely delegates this duty to a private company, the private company is functioning as a state actor for the purpose of section 1983, because its conduct is fairly attributable to the state"); *McCullum v. City of Philadelphia*, 1999 WL 493696, *3 (E.D.Pa. July 13, 1999) ("the court finds that Plaintiff has sufficiently alleged facts which show Aramark was acting under color of state law for purposes of § 1983"); *McRoy v. Sheahan*, 2004 WL 1375527, *2 (N.D. Ill. June 17, 2004 (Mag. J. Brown) ("As a contractor performing the public function of running a jail[,] Aramark is acting under the color of state law and is treated the

(continued...)

Aramark has not addressed whether the legal standard used in those jurisdictions holding that it is not a state actor is the same as that in the Sixth Circuit. The only decisions the Court has located in this circuit addressing the status of Aramark have assumed, for purposes of screening, that Aramark is a state actor. *Johnson,* 2012 WL 219503, at *2 n.3; *Grimes v. Aramark Corr. Servs. Co.,* No. 5:10CV-P43-R, 2010 WL 4638780, at *3 n.4 (W.D. Ky. Nov. 5, 2010) (same); *Lucas v. Aramark Corrs. Food Serv.,* No. 3:08CV-P310-H, 2010 WL 59194, at *1 n.2 (W.D. Ky. Jan. 5, 2010) (same); *Crow v. Dailey,* No. 3:06CV-P176-S, 2006 WL 2734433, at *2 n.1 (W.D. Ky. Sept. 21, 2006) (same); *see also Wilson v. ABL Food Servs.,* No. 3:11-0530, 2012 WL 3779472, at *5 (M.D. Tenn. Aug. 7, 2012) (holding, on a motion for summary judgment, that "Defendant ABL, a corporation that contracts with the State to provide food to inmates, is considered a state actor for purposes of § 1983") (report and recommendation), *adopted,* 2012 WL 3779470 (M.D. Tenn. Aug. 30, 2012).

This aspect of Aramark's Motion to Dismiss is DENIED.

Next, Aramark seeks dismissal of the Free Exercise claim because Plaintiff has not sufficiently alleged that he was injured due to an Aramark policy or custom. The Sixth Circuit has applied the standards for assessing municipal liability to claims against private

---

[20](...continued)
same as a municipality for purposes of § 1983."). The bottom line is that Aramark should be more careful in the future in how it represents the case law to this Court.

*Horton v. Sheriff of Cook Cnty.,* No. 11 C 6064, 2012 WL 5838183, at *3 (N.D. Ill. Nov. 16, 2012). The Court endorses these observations.

corporations that operate prisons or provide care to prisoners. *Thomas v. Coble*, 55 F. App'x

748, 748-49 (6th Cir. 2003); *see also Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388

(6th Cir. 2001); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996). Aramark

"cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of

Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against

Aramark, Plaintiff "must show that a policy or well-settled custom of the company was the

'moving force' behind the alleged deprivation" of his rights. *Id.*; *see also Bruederle v.

Louisville Metro Gov't,* 687 F.3d 771, 777 (6th Cir. 2012) (same), *cert. denied,* 133 S. Ct.

866 (2013).

The amended complaint alleges that requests for religious diets must be submitted to

the chaplain, "who must verify it, then send it to the assistant chief of Programs or designee,

who then must approve of the diet." (ECF No. 33-1 at 3, ¶ 12.) The Muslim chaplain

forwarded a request for Plaintiff to receive halal meals (*id.* at 3-4, ¶ 14), and Defendant

Moore allegedly denied Plaintiff's request because the Jail serves a non-pork diet to all

inmates (*id.* at 4, ¶ 16). These allegations suggest that it is the Jail's policy, rather than any

decision by Aramark, that prevents Plaintiff from receiving a halal diet.

To be sure, the amended complaint contains some allegations about Aramark, but it

is unclear what point Plaintiff is attempting to make. He alleges as follows:

> 19.)    On or about March 25, 2013 the plaintiff wrote a complaint letter
> to Defendant Aramark's Operations Manager Patricia Hart, who is on site,
> about the incoming and outgoing mail and my continueous [sic] request for a
> halal diet and on March 26, 2013 Defendant Aramark representative on site
> responded with "Your food complaint will be forwarded to the kitchen."

31

20.)  On or about April 1, 2013 a town hall meeting was conducted where the plaintiff was present at all times when he ask the Aramark food service representative about the type of meat it serve since the only thing that comes out is water with no grease or oil mixed with it and the Aramark food service representative couldn't explain the type of meat it serves, but stated he know it is not processed meat.

(*Id.* at 4-5, ¶¶ 19-20; *see also id.* at 5, ¶ 22 (alleging that an Aramark lawyer sent Plaintiff a letter stating that the company was not covered under the Tennessee Open Records Act)).

Paragraphs 19 and 21 pertain only to Aramark's responses to correspondence and questions raised by Plaintiff.  (*Id.* at 4-5.)  Paragraph 20 appears to be unrelated to Plaintiff's claim that he has not been provided with a halal diet at the Jail.  (*Id.* at 5.)  The relevance of the allegations about the "type of meat" served by Aramark is unclear.  For purposes of Plaintiff's claims in this action, the "type of meat" is important only insofar as the meat is or is not halal.  Because Plaintiff's request for a halal diet was denied by Defendant Moore, the Court has assumed that Plaintiff has adequately alleged that he is not receiving halal meat.

Therefore, the Court GRANTS Aramark's motion to dismiss the Free Exercise claim against it on the ground that Plaintiff has not sufficiently alleged that his injury was due to a policy or custom of Aramark.  This dismissal is without leave to Plaintiff's right to file a second amended complaint that cures that deficiency if he is able to do so.

Aramark has moved to dismiss the RLUIPA claim against it on the ground that Plaintiff has not sufficiently alleged that Aramark has imposed a substantial burden on his exercise of religion.  (ECF No. 19-1 at 16-17.)  The basis for this aspect of the motion is that

Plaintiff "does not allege that Aramark has any input whatsoever in deciding whether he should receive a religious diet." (*Id.* at 17.) This argument is well taken. The amended complaint alleges that Defendant Moore made the decision to deny Plaintiff's request for a religious diet. This aspect of Aramark's Motion to Dismiss is GRANTED. This dismissal also is without prejudice to his right to file a second amended complaint that cures the deficiency if the facts so warrant.

Aramark has also moved to dismiss Plaintiff's claims because he has no constitutional right to receive halal meat. (*Id.* at 17-18.) The Court has declined to dismiss the Free Exercise claim despite the fact that Plaintiff has no right to compel any party to provide him with a halal diet. This aspect of Aramark's Motion to Dismiss is DENIED.

Finally, Aramark argues that Plaintiff has failed to comply with the statutory filing requirements under Tennessee Code Annotated § 41-21-805. (ECF No. 19-1 at 18-20.) Aramark has not cited any decision holding that a prisoner suit that is removed to federal court may be dismissed for failure to comply with that provision. The decision in *Pence v. TMNO Healthcare, LLC,* No. 13-1199, 2013 WL 5550862 (W.D. Tenn. Oct. 8, 2013), on which Aramark relies, arose in an entirely dissimilar context, involving a defendant's objection to a plaintiff's motion to voluntarily dismiss a removed case without prejudice and consideration of whether such a dismissal would deprive the defendant of an absolute defense.

It is unclear whether, if a motion to dismiss on the basis of Plaintiff's failure to submit the affidavit required by § 41-21-805 had been filed in state court, Plaintiff would have been

permitted to cure that defect. The case is no longer in state court, the filing fee has been paid by Defendants Oldham and Moore, as the removing parties, and Plaintiff has been given leave to file an amended complaint that does not rely on § 41-21-805. Because Aramark has not demonstrated that it is entitled to dismissal of Plaintiff's complaint on that basis after its removal to federal court, this aspect of the Motion to Dismiss is DENIED.

In summary, Aramark's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Free Exercise and RLUIPA claims against Aramark are DISMISSED WITHOUT PREJUDICE to Plaintiff's right to file a second amended complaint that cures the pleading deficiencies.

On January 17, 2014, Plaintiff filed a motion for a temporary restraining order and preliminary injunction, entitled "Memorandum Of Law In Support Of Plaintiff's Motion For A Temporary Restraining Order And Preliminary Injunction." (ECF No. 36.) Plaintiff's proposed order would direct that "all the defendants shall arrange for the plaintiff to provide his own means for the halal meats to be brought to the Shelby County Jail and prepared by Defendant Aramark Correctional Service, LLC and place on each one of the plaintiff's meal, including his diabetic sack lunch he receives every evening before lockdown." (ECF No. 36-2 at 1-2.) Defendants Shelby County, Moore, and Oldham have not responded to this motion and have not sought an extension of time in which to do so.[21]

---

[21] On January 24, 2014, Aramark filed its Motion and Supporting Memorandum for an Extension of Time to File Responses to Plaintiff's Pending and Future Motions. (ECF No. 38.) Because the Court has dismissed Aramark as a party to this action, that motion is DENIED as moot.

A response from the remaining Defendants to the pending motion for injunctive relief will be required. Therefore, Defendants Shelby County, Oldham and Moore are ORDERED to file a response to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction. Both that response and an answer to the amended complaint are due within twenty-one (21) days after the date of this order.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE